(No. 98225.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. MICHAEL E. HALL, Appellant.

*Opinion filed December 15, 2005.*

THOMAS, C.J., joined by FITZGERALD and GARMAN, JJ., dissenting.

Daniel D. Yuhas, Deputy Defender, and Keleigh L. Biggins, Assistant Defender, of the Office of the State Appellate Defender, of Springfield, for appellant.

Lisa Madigan, Attorney General, of Springfield, and Scott Rueter, State's Attorney, of Decatur (Gary Feinerman, Solicitor General, and Linda D. Woloshin and David H. Iskowich, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE KILBRIDE delivered the opinion of the court:

Defendant, Michael E. Hall, filed a postconviction petition alleging his guilty plea to the offense of aggravated kidnapping was involuntary. The circuit court of Macon County dismissed defendant's petition at the second stage of the proceedings, and the appellate court affirmed the circuit court's judgment. No. 4—02—0741 (unpublished order under Supreme Court Rule 23). We allowed defendant's petition for leave to appeal. 177 Ill. 2d R. 315(a).

On appeal to this court, defendant contends: (1) the Sex Offender Registration Act (Registration Act) (730 ILCS 150/1 *et seq.* (West 2002)) and the Sex Offender and Child Murderer Community Notification Law (Notification Law) (730 ILCS 152/101 *et seq.* (West 2002)) are unconstitutional as applied to him because there is no evidence that his offense was sexually motivated; and (2) the trial court erred in dismissing his postconviction petition because he established a substantial showing that his guilty plea was involuntary. We conclude defendant's petition established a substantial showing that his guilty

plea was involuntary and, therefore, we need not reach his claims concerning the constitutionality of the Registration Act and Notification Law. We reverse the judgments of the appellate and circuit courts, and remand this matter to the circuit court for an evidentiary hearing on defendant's postconviction claims.

## I. BACKGROUND

The State charged defendant by information with aggravated kidnapping, theft of property having a value in excess of $300, and aggravated unlawful refusal to obey an order to stop. 720 ILCS 5/10—2(a)(2), 16—1(a)(1)(A) (West 1998); 625 ILCS 5/4—103.2(a)(7)(A) (West 1998). The trial court appointed counsel to represent defendant. The parties subsequently entered into a negotiated plea agreement requiring defendant to plead guilty to aggravated kidnapping in exchange for dismissal of the other counts and the State's recommendation of six years' imprisonment. At the plea hearing, the trial court admonished defendant as follows:

"THE COURT: Mr. Hall, Count I charges you with the offense of Aggravated Kidnapping on April 15th, 1999 in Macon County. It alleges that you knowingly and secretly confined *** a child under the age of 13 years, against her will. Do you understand what the charge is?

THE DEFENDANT: Yes.

THE COURT: Are you at this time offering to enter a plea of guilty?

THE DEFENDANT: Yes.

THE COURT: Are you doing this of your own free will?

THE DEFENDANT: Yes."

The trial court then advised defendant of the minimum and maximum penalties for aggravated kidnapping. The court also admonished defendant that his guilty plea would result in waiver of his privilege against self-incrimination and his rights to a trial, to call witnesses, and to confront the witnesses against him.

In the factual basis for the charge, the prosecutor as-

serted defendant entered a vehicle while it was left running at a gas station. The owners' 21-month-old daughter was in a car seat inside the car. According to the prosecutor, defendant "drove the car off the lot at a very high rate of speed. Officers pursued for a substantial distance. The car was finally stopped at Wood and Martin Luther King Drive when he wrecked the car. The child was not injured."

The trial court accepted the plea, dismissed the remaining counts, and sentenced defendant to six years' imprisonment. After defendant was sentenced, his attorney asserted there were "mitigating factors." According to counsel, defendant believed it was in his best interest to plead guilty, but did not admit he was guilty of the offense.

Defendant later filed a *pro se* motion to withdraw his guilty plea. The trial court reappointed defendant's trial counsel to represent him. At the hearing on the motion, defendant was allowed a recess to speak with his attorney. When the case was recalled, defendant's attorney informed the court that defendant wished to withdraw his motion. Upon questioning by the trial court, defendant confirmed he wished to withdraw his motion of his own free will. Defendant did not appeal the trial court's judgment.

Defendant subsequently filed a *pro se* petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122—1 *et seq.* (West 2000)), alleging his guilty plea was not entered knowingly, intelligently, or voluntarily. Defendant alleged, among other things, he informed his attorney that he did not know the child was in the backseat of the car until after he wrecked the vehicle. Counsel advised defendant he did not have a valid defense to aggravated kidnapping based on his lack of awareness that the child was inside the car. Defendant also alleged his attorney stated defendant would be convicted and

sentenced to at least 25 years' imprisonment if he insisted on having a trial. Defendant further alleged that the trial court failed to admonish him properly to ensure his guilty plea was voluntary and that the factual basis for the plea was insufficient. Defendant attached a copy of the charging instrument, the transcript of the guilty plea hearing, and his affidavit to his postconviction petition.

In his affidavit, defendant asserted he was using a pay phone in a gas station parking lot in an effort to get a ride home. When he was unable to contact anyone to provide transportation, he went across the street to seek shelter from the rain. Defendant attested he had been drinking heavily for several hours and was agitated due to his inability to find a ride home.

He was crossing the street to use the pay phone again when he observed a car being parked in front of the gas station. The driver exited the car and went into the gas station, but left the car running. It appeared there was no one inside the vehicle. Defendant entered the vehicle, drove away, and subsequently ran into a car that was stopped in front of him. Defendant opened the door of the vehicle, but could not exit because his foot was caught on something. He then saw "the reflection of police lights." Defendant asserted he looked in the rearview mirror, but "the images were all a blur." When he turned to look out the rear window, defendant observed a child in the rear seat.

Defendant described in detail two separate conversations with his appointed attorney following his arrest. Defendant asserted he informed his attorney that he only intended to take the car and he did not know the child was inside. Counsel repeatedly informed defendant that his lack of awareness of the child was not a defense to the charge of aggravated kidnapping. Counsel also informed defendant he would be convicted and most

likely sentenced to a term of 25 years or more if he insisted on a trial. Defendant stated he was convinced by counsel that he did not have a defense to this charge and his guilty plea was induced by his attorney's advice.

The trial court reviewed the petition, docketed it for further consideration, and appointed counsel to represent defendant. Defendant filed an amended petition with the assistance of counsel. In his amended petition, defendant repeated his *pro se* claims of ineffective assistance of counsel and trial court error. Additionally, defendant alleged his trial counsel was ineffective for failing to advise him that he would be required to register as a sex offender as a result of his guilty plea to the offense of aggravated kidnapping.

The State moved to dismiss the petition, asserting defendant failed to make a substantial showing of a constitutional violation. Following a hearing, the trial court granted the State's motion to dismiss.

On appeal, defendant argued the trial court erred in dismissing his petition at the second stage because he made a substantial showing that he received ineffective assistance of counsel. Defendant also asserted the trial court failed to ensure his guilty plea was not the result of threats or coercion. Defendant further argued the Registration Act is unconstitutional as applied to him on due process and equal protection grounds.

The appellate court noted the charging instrument alleged knowledge as an element of aggravated kidnapping. Additionally, the trial court informed defendant that knowledge is an element of the offense. Based on these facts, the appellate court found defendant was aware that knowledge is an element of the offense. The appellate court, therefore, held defendant could not establish a claim of ineffective assistance of counsel because he could not show he was prejudiced by the alleged erroneous advice of his attorney. The appellate

court also found defendant was not prejudiced by the trial court's failure to inquire whether his guilty plea was due to threats or coercion. The appellate court further held application of the Registration Act to defendant did not result in a violation of his constitutional rights. The appellate court, therefore, affirmed the judgment of the circuit court. No. 4—02—0741 (unpublished order under Supreme Court Rule 23). We allowed defendant's petition for leave to appeal. 177 Ill. 2d R. 315(a).

## II. ANALYSIS

On appeal to this court, defendant initially argues the Registration Act and the Notification Law are unconstitutional as applied to him. Defendant also contends his postconviction petition made a substantial showing that his guilty plea was involuntary. We will first address the latter issue, the voluntariness of defendant's guilty plea, because its resolution renders unnecessary any consideration of the constitutionality of the Registration Act and Notification Law. It is fundamental that courts should not address issues involving the constitutionality of a statute unless it is necessary to decide the case. *Turcol v. Pension Board of Trustees of the Matteson Police Pension Fund*, 214 Ill. 2d 521, 524 (2005), citing *Vuagniaux v. Department of Professional Regulation*, 208 Ill. 2d 173, 184 (2003).

Before addressing the merits of defendant's postconviction claim that his guilty plea was involuntary, we must first address a procedural issue raised by the State. The State argues the dismissal of defendant's petition should be affirmed because he failed to support his claims with affidavits, records, or other evidence as required by section 122—2 of the Act (725 ILCS 5/122—2 (West 2000)). Defendant replies the documents attached to his *pro se* petition are sufficient to comply with section 122—2.

A postconviction petition must be verified by affidavit. 725 ILCS 5/122—1(b) (West 2000). The allegations in the petition must also be supported by affidavits, records, or other evidence. 725 ILCS 5/122—2 (West 2000). If this documentation is not attached, the petition must explain why it is unavailable. 725 ILCS 5/122—2 (West 2000).

The State cites *People v. Collins*, 202 Ill. 2d 59 (2002), in support of its contention that the dismissal should be affirmed for failure to attach sufficient supporting documentation. In *Collins*, the defendant filed a *pro se* postconviction petition after he was convicted of possession of a controlled substance with intent to deliver. *Collins*, 202 Ill. 2d at 61-62. The defendant alleged his trial counsel failed to assist the defendant in filing an appeal and seeking a reduction of the sentence. *Collins*, 202 Ill. 2d at 62. The defendant attached a sworn verification of his petition, but did not attach any other supporting documentation. *Collins*, 202 Ill. 2d at 62. The circuit court summarily dismissed the defendant's petition as frivolous and patently without merit. *Collins*, 202 Ill. 2d at 62.

On review, this court noted that, contrary to the requirements of section 122—2, the defendant's petition was not supported by documentation and did not explain the absence of such documentation. *Collins*, 202 Ill. 2d at 66. This court held the defendant's failure to comply with section 122—2 justified the summary dismissal of his petition. *Collins*, 202 Ill. 2d at 66.

We find *Collins* is not applicable in this case. *Collins* involved summary dismissal of the defendant's petition at the first stage of the proceedings for failure to comply with section 122—2. In contrast, this case has proceeded beyond the first stage of the proceedings. Moreover, *Collins* is factually distinguishable. Unlike the defendant in *Collins*, defendant here supported his petition with the

transcript of the guilty plea hearing, a copy of the charging instrument, and an affidavit setting forth in detail the alleged misrepresentations of his attorney.

We recognize this court has stated that the purpose of section 122—2 is to show a defendant's postconviction allegations are capable of objective or independent corroboration. *Collins*, 202 Ill. 2d at 67. Failure to attach independent corroborating documentation or explain its absence may, nonetheless, be excused where the petition contains facts sufficient to infer that the only affidavit the defendant could have furnished, other than his own sworn statement, was that of his attorney. See *Collins*, 202 Ill. 2d at 68, quoting *People v. Williams*, 47 Ill. 2d 1, 4 (1970).

Here, defendant's explanation for the absence of additional documentation can easily be inferred from the allegations of his petition and affidavit. In these filings, defendant described in detail his consultations with his attorney. Defendant referred only to himself and counsel in these descriptions and did not mention the presence of anyone else. These allegations indicate counsel's legal advice was rendered within the bounds of a private consultation between defendant and his attorney. This implication is strengthened because attorney-client consultations generally occur in private to protect the confidentiality of privileged information. See *Illinois Education Ass'n v. Illinois State Board of Education*, 204 Ill. 2d 456, 467 (2003) (communications must be made in confidence to maintain the attorney-client privilege). Thus, the circumstances of this case permit a reasonable inference that the only people present during this consultation were defendant and his attorney. Given these circumstances, the only affidavit defendant could have furnished to support his allegations, other than his own, was that of his attorney. As noted in *Williams*, the "difficulty or impossibility of obtaining such an affidavit

is self-apparent." *Williams*, 47 Ill. 2d at 4. Accordingly, we conclude the documentation attached to defendant's petition is sufficient to comply with the Act.

On the merits, defendant contends the trial court erred in dismissing his petition because he made a substantial showing that his guilty plea was involuntary. In support of this claim, defendant asserts his petition showed his trial attorney provided ineffective assistance in advising him that he did not have a valid defense to aggravated kidnapping based on his lack of knowledge that the child was inside the car. Defendant also argues his attorney pressured him to plead guilty by stating he would be convicted and sentenced to 25 years' imprisonment if he insisted on going to trial.

In response, the State contends the information and trial court admonitions put defendant on notice that knowledge is an element of the offense. Therefore, defendant cannot show he was prejudiced by the alleged advice of his attorney. The State also argues defendant cannot show counsel was incorrect in advising defendant that he would be convicted and sentenced to 25 years' imprisonment if he went to trial.

The dismissal of a postconviction petition is warranted at the second stage of the proceedings only when the allegations in the petition, liberally construed in light of the trial record, fail to make a substantial showing of a constitutional violation. *People v. Coleman*, 183 Ill. 2d 366, 382 (1998). At that stage, all factual allegations that are not positively rebutted by the record are accepted as true. *People v. Childress*, 191 Ill. 2d 168, 174 (2000). The dismissal of a postconviction petition without an evidentiary hearing is reviewed *de novo. Coleman*, 183 Ill. 2d at 388-89.

A challenge to a guilty plea alleging ineffective assistance of counsel is subject to the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674,

104 S. Ct. 2052 (1984). *People v. Rissley*, 206 Ill. 2d 403, 457 (2003) (citing *Hill v. Lockhart*, 474 U.S. 52, 57, 88 L. Ed. 2d 203, 209, 106 S. Ct. 366, 369-70 (1985), and *People v. Huante*, 143 Ill. 2d 61, 67 (1991)). Under *Strickland*, a defendant must establish that counsel's performance fell below an objective standard of reasonableness and the defendant was prejudiced by counsel's substandard performance. *People v. Lawton*, 212 Ill. 2d 285, 302 (2004).

An attorney's conduct is deficient if the attorney failed to ensure that the defendant's guilty plea was entered voluntarily and intelligently. *Rissley*, 206 Ill. 2d at 457, citing *Huante*, 143 Ill. 2d at 69. As charged in this case, aggravated kidnapping is defined as knowingly and secretly confining a child under 13 years of age against the child's will. 720 ILCS 5/10—2(a)(2) (West 1998). Knowing conduct is performed "wilfully." 720 ILCS 5/4—5 (West 1998). Taken as true, defendant's factual allegation that he did not know the child was inside the vehicle constitutes a defense to the charge of aggravated kidnapping. The alleged advice of defendant's attorney to the contrary was clearly erroneous. Thus, defendant's petition establishes a substantial showing that his attorney's advice was objectively unreasonable.

To establish the prejudice prong of an ineffective assistance of counsel claim in these circumstances, the defendant must show there is a reasonable probability that, absent counsel's errors, the defendant would have pleaded not guilty and insisted on going to trial. *Rissley*, 206 Ill. 2d at 457, quoting *Hill*, 474 U.S. at 59, 88 L. Ed. 2d at 210, 106 S. Ct. at 370. A bare allegation that the defendant would have pleaded not guilty and insisted on a trial if counsel had not been deficient is not enough to establish prejudice. *Rissley*, 206 Ill. 2d at 458-59. Rather, the defendant's claim must be accompanied by either a claim of innocence or the articulation of a plausible

defense that could have been raised at trial. *Rissley*, 206 Ill. 2d at 459-60, quoting *United States v. LaBonte*, 70 F.3d 1396, 1413 (1st Cir. 1995), *rev'd on other grounds*, 520 U.S. 751, 137 L. Ed. 2d 1001, 117 S. Ct. 1673 (1997). Under *Hill*, the question of whether counsel's deficient representation caused the defendant to plead guilty depends in large part on predicting whether the defendant likely would have been successful at trial. *People v. Pugh*, 157 Ill. 2d 1, 15 (1993), citing *Hill*, 474 U.S. at 59, 88 L. Ed. 2d at 210, 106 S. Ct. at 370-71.

Defendant alleged he was induced to plead guilty by his attorney's advice that he had no defense to the charge of aggravated kidnapping. As noted, defendant had a defense based on his assertion that he did not know the child was inside the car. The State argues that defendant's claim that he was unaware of the child's presence "strains belief." This argument is misplaced because credibility determinations are not made at the second stage of the proceedings. See *Childress*, 191 Ill. 2d at 174. Further, the State assumed the truth of defendant's factual allegations by moving to dismiss his petition. See *People v. Harris*, 206 Ill. 2d 1, 53-54 (2002). Defendant's allegations, taken as true, clearly constitute a plausible defense to aggravated kidnapping. Moreover, as defense counsel stated at the plea hearing, defendant did not admit he was guilty of the offense. Defendant's allegations also support a claim of innocence of aggravated kidnapping. See *Rissley*, 206 Ill. 2d at 459-60. Thus, we conclude defendant has established a reasonable probability that he would have pleaded not guilty and insisted on a trial absent counsel's deficient advice.

The State, nonetheless, argues defendant was not prejudiced by his attorney's advice because the record shows he was aware that knowledge is an element of the offense based on the information and the trial court's admonitions at the plea hearing. Defendant replies that

the trial court's admonitions were insufficient to overcome the prejudice of his attorney's repeated warnings that he did not have a defense to the charge of aggravated kidnapping.

Although the trial court's admonitions cannot be disregarded as a mere formality, they are not sufficient in every circumstance to negate the effect of erroneous advice from defense counsel. See *People v. Morreale*, 412 Ill. 528, 533-34 (1952). In *Morreale*, the defendant pleaded guilty after his attorney advised him not to " 'worry about anything; plead guilty and you will get probation.' " *Morreale*, 412 Ill. at 530. At a subsequent sentencing hearing, the State did not oppose probation. *Morreale*, 412 Ill. at 531. The defendant was, nevertheless, sentenced to a term of 5 to 10 years' imprisonment. *Morreale*, 412 Ill. at 529.

On review, this court found the defendant was induced to plead guilty while in a state of confusion and misapprehension due to the "hurried consultations" that occurred immediately prior to the guilty plea. *Morreale*, 412 Ill. at 532-33. Additionally, the prosecutor exerted pressure to dispose of the matter and have defense counsel's associate represent the defendant at the plea hearing, thus depriving the defendant of the counsel of his choice. *Morreale*, 412 Ill. at 533. Based on all of the circumstances, this court held the defendant's guilty plea was not knowing and voluntary. *Morreale*, 412 Ill. at 533. Further, although the trial court "fully and properly" admonished the defendant concerning the potential consequences of his guilty plea, the admonitions were insufficient to overcome counsel's erroneous advice that the defendant would be given probation. *Morreale*, 412 Ill. at 533-34.

More recently, this court considered other cases raising the issue of whether a trial court's admonitions were sufficient to overcome the prejudice to a defendant as a

result of an attorney's erroneous advice. See *People v. Ramirez*, 162 Ill. 2d 235 (1994); *People v. Jones*, 144 Ill. 2d 242 (1991). In *Ramirez*, the defendant alleged his attorney stated he had worked out an agreement with the judge and the defendant would be sentenced to two years' probation. *Ramirez*, 162 Ill. 2d at 240. The defendant plead guilty and was sentenced to a five-year term of imprisonment. *Ramirez*, 162 Ill. 2d at 237. The defendant subsequently filed a postconviction petition claiming his guilty plea was involuntary because it was based on his attorney's misrepresentation. *Ramirez*, 162 Ill. 2d at 240.

Similarly, in *Jones*, the defendant alleged his attorney pressured him to plead guilty by suggesting the judge would not impose the death penalty because he owed the attorney a favor. *Jones*, 144 Ill. 2d at 262. The defendant pled guilty and was ultimately sentenced to death. *Jones*, 144 Ill. 2d at 249. The defendant filed a postconviction petition asserting his guilty plea was involuntary due to the erroneous advice of his attorney. *Jones*, 144 Ill. 2d at 262-63.

In both *Ramirez* and *Jones*, this court examined the decision in *Morreale*, but found that case was distinguishable. *Ramirez*, 162 Ill. 2d at 245; *Jones*, 144 Ill. 2d at 265-66. We noted the facts in *Morreale* concerning the "hurried consultations," the pressure exerted by the prosecutor, and the denial of the defendant's counsel of choice were not present in *Ramirez* and *Jones*. *Ramirez*, 162 Ill. 2d at 245; *Jones*, 144 Ill. 2d at 265. We also found the trial court's admonitions were more comprehensive than those required when Morreale pleaded guilty. *Ramirez*, 162 Ill. 2d at 245; *Jones*, 144 Ill. 2d at 265. In fact, in *Ramirez* and *Jones*, the trial court's admonitions were specifically characterized by this court as "lengthy and exhaustive." *Ramirez*, 162 Ill. 2d at 245; *Jones*, 144 Ill. 2d at 263. The defendants were thoroughly admonished to ensure their guilty pleas were not obtained by

any threats, promises, or coercion. *Ramirez*, 162 Ill. 2d at 241-43; *Jones*, 144 Ill. 2d at 263. We concluded the trial court's admonitions were sufficient to ensure the defendants entered voluntary pleas of guilty despite the erroneous advice of counsel. *Ramirez*, 162 Ill. 2d at 245; *Jones*, 144 Ill. 2d at 265.

The critical issue in *Morreale*, *Ramirez*, and *Jones*, as applicable here, is whether the trial court's admonitions were sufficiently related to counsel's erroneous advice to overcome the prejudice created by that advice. Although the dissent engages in a detailed discussion of *Morreale*, it does not focus on the trial court's admonitions. When the dissent does mention the admonitions in *Morreale*, it states they were limited to " 'the consequences of entering such a plea.' " 217 Ill. 2d at 343 (Thomas, C.J., dissenting, joined by Fitzgerald and Garman, JJ.), quoting *Morreale*, 412 Ill. at 530. The dissent, however, misses the point that those admonitions contradicted defense counsel's specific erroneous advice that the defendant would be given probation. In *Morreale*, even though the trial court "fully and properly" advised the defendant of the potential consequences of his guilty plea, those admonitions were insufficient to overcome defense counsel's erroneous advice that the defendant would receive probation. *Morreale*, 412 Ill. at 533-34.

Likewise, in *Ramirez* and *Jones*, the trial court's admonitions specifically addressed the erroneous advice of counsel concerning the potential consequences of pleading guilty. This court characterized the admonitions in *Ramirez* and *Jones* as "lengthy and exhaustive" and stated the defendants were thoroughly admonished on their claimed errors. *Ramirez*, 162 Ill. 2d at 241-43, 245; *Jones*, 144 Ill. 2d at 263.

In contrast, defendant was not given any admonition that specifically addressed the erroneous advice of his attorney, much less "lengthy and exhaustive" ones.

Regarding the nature of the charge, the record shows the trial court simply read the aggravated kidnapping count from the information and asked if defendant understood "what the charge is." This admonition simply confirmed that defendant knew what was stated in the information. The admonition ensured defendant was aware of the language of the charge, but it did not add to his understanding of the knowledge element of the offense.

The admonitions in this case were less likely to overcome the prejudice of counsel's erroneous advice than those in *Ramirez*, *Jones*, or even *Morreale*. In each of those cases, the defendant received admonitions that addressed his particular claim of error. Here, defendant did not receive such admonitions.

Defendant's trial counsel alone carried the responsibility of discussing with defendant the detailed facts of this case and advising him of potential defenses. The alleged advice of counsel would have necessarily influenced defendant's understanding of the knowledge element as it would be applied to his conduct. According to defendant, counsel repeatedly stated defendant's lack of awareness that the child was inside the car did not constitute a defense to aggravated kidnapping. Counsel also advised defendant he would be convicted and sentenced to at least 25 years' imprisonment if he insisted on a trial. This advice likely reinforced defendant's perception that he had no defense to the charge. Defendant asserted he was convinced by counsel that he did not have a defense. To state the obvious, defendant was entitled to rely on the advice of his attorney concerning the legal effect of available evidence and possible defenses to the charge.

We emphasize that we do not determine in this case whether the trial court's admonitions were in compliance with Supreme Court Rule 402 (177 Ill. 2d R. 402). That is not the relevant inquiry. The question here is whether the admonitions were sufficient to overcome the alleged

erroneous advice of defendant's trial counsel. Despite the efforts of the trial court, the record shows the admonitions did not address the misrepresentations of defendant's trial counsel.

Based on the specific facts of this case, we conclude the admonishments of the trial court and the language of the charging instrument are not sufficient to alleviate the prejudice of the alleged repeated erroneous advice of counsel. Defendant's petition, liberally construed, establishes a substantial showing that his guilty plea was involuntary due to ineffective assistance of counsel. Given this resolution, we need not address defendant's alternative arguments concerning the voluntariness of his guilty plea due to trial court error.

Defendant is entitled to an evidentiary hearing on his postconviction claims that his guilty plea was involuntary. At the evidentiary hearing, defendant will be given an opportunity to establish his factual claims concerning the alleged erroneous advice of his trial counsel. Following the evidentiary hearing, defendant might be allowed to withdraw his guilty plea, thus rendering the Registration Act and Notification Law inapplicable to him. Accordingly, we decline to address the constitutionality of the Registration Act and Notification Law because defendant's appeal is properly resolved on his claim concerning the voluntariness of his guilty plea. See *People v. Lee*, 214 Ill. 2d 476, 482 (2005) (this court will not consider a constitutional question when a case can be resolved on other grounds).

## CONCLUSION

For the foregoing reasons, we reverse the judgment of the appellate court and the circuit court's dismissal of defendant's postconviction petition and remand this matter to the circuit court for an evidentiary hearing on his postconviction claims.

*Judgments reversed;*
*cause remanded.*

CHIEF JUSTICE THOMAS, dissenting:

Unlike the majority, I am convinced that defendant was in no way prejudiced by counsel's allegedly erroneous advice. Accordingly, I respectfully dissent.

In *People v. Morreale*, 412 Ill. 528 (1952), the defendant was indicted on June 17, 1950, and he entered a not-guilty plea several weeks later. On May 17, 1951, the case was called for trial. The defendant's counsel, George Crane, could not be present that day, as he was trying another case. The defendant was instead represented by "a youthful associate of Crane," who asked for a continuance until Crane could be present. Instead of a continuance, the assistant State's Attorney suggested that the case be passed so that the parties could discuss a guilty plea. The trial court passed the case, and the two attorneys set out to find Crane. *Morreale*, 412 Ill. at 529-30.

After finding Crane in another courtroom, the assistant State's Attorney asked Crane if he was available to represent the defendant in the entry of a guilty plea. Crane responded that it was impossible. The assistant State's Attorney suggested that Crane's youthful associate could represent the defendant, assuring Crane that the State would not oppose probation and that the defendant "couldn't get hurt." Crane acquiesced and instructed his youthful associate to follow the assistant State's Attorney's lead. Accordingly, the youthful associate instructed the defendant to change his plea to guilty, assuring the defendant that he would get probation. When the defendant balked, the youthful associate returned him to Crane, who told him not to " 'worry about anything; plead guilty and you will get probation.' " *Morreale*, 412 Ill. at 530.

The defendant returned to the courtroom with the youthful associate and entered a guilty plea. Before accepting the plea, the trial court "questioned [Morreale]

as to whether such action was his wish and duly admonished him as to the consequences of entering such a plea." *Morreale*, 412 Ill. at 530. Morreale answered in the affirmative, and the trial court accepted the plea. Two weeks later, the trial court sentenced the defendant to 5 to 10 years in prison. The defendant moved to withdraw his guilty plea, and the trial court denied the motion. *Morreale*, 412 Ill. at 531.

In reversing, this court explained that "[t]here are several circumstances, *peculiar to the record before us in this cause*, which lead us to believe that the ends of justice will be better served by permitting plaintiff in error to change his plea and submit the matter of his guilt to a jury." (Emphasis added.) *Morreale*, 412 Ill. at 532. These circumstances included (1) the longevity of the defendant's original not-guilty plea; (2) the "hurried consultations" between Crane, the assistant State's Attorney, and the youthful associate, which "were accomplished during a recess of court by passing back and forth between two courtrooms"; (3) the initiation of plea discussions by the State, at a time when the defendant lacked representation by the actual counsel of his choice; (4) the assistant State's Attorney's representation that he would not oppose probation; and (5) the timing of the trial court's admonitions, which "follow[ed] so closely on the heels of the haste, confusion and influence discussed above." *Morreale*, 412 Ill. at 532-34. Ultimately, this court concluded, "[w]hen all the circumstances are considered, *particularly the fact that the prosecutor was the moving party in suggesting that no harm would come to plaintiff in error if he pleaded guilty*, it is difficult to say that his act was a knowing and studied attempt to throw himself on the mercy of the court in a hope for milder punishment." (Emphasis added.) *Morreale*, 412 Ill. at 533.

Compare those facts with the present case. Here, defendant was arrested on April 15, 1999, and formally

charged by information on April 21, 1999. A public defender was appointed, and a preliminary hearing was held on April 29, 1999. Three weeks later, on May 19, 1999, defendant entered a fully negotiated guilty plea to the aggravated kidnapping charge, for which he received the statutory minimum sentence of six years in prison. Before accepting the plea, the trial court admonished defendant as follows:

"THE COURT: Mr. Hall, Count I charges you with the offense of Aggravated Kidnaping on April 15th, 1999 in Macon County. It alleges that you knowingly and secretly confined [the victim], a child under the age of 13 years, against her will. Do you understand what the charge is?

THE DEFENDANT: Yes.

THE COURT: Are you doing this of your own free will?

THE DEFENDANT: Yes.

THE COURT: This would be a Class X felony. That means the possible penalty could be a fine of $1.00 up to $25,000 and a period of incarceration from 6 years not to exceed 30 years with a mandatory parole of 3 years. Do you understand what the possible penalty could be?

THE DEFENDANT: Yes.

THE COURT: Also, if you plead guilty, you are waiving or giving up your right to a trial by the court or by the jury. You are giving up your right to cross-examine the witnesses that might testify against you. You are giving up your right to subpoena witnesses in to testify for you, and you are giving up your right against self-incrimination. Do you understand if you plead guilty, you are giving up all these rights and we would not have a trial of any type?

THE DEFENDANT: Yes.

THE COURT: Do you have any questions?

THE DEFENDANT: No."

The facts demonstrate that this was an entirely routine guilty plea case. Defendant entered a fully negotiated guilty plea shortly after being charged, the terms of which were hammered out before the relevant hearing commenced. Moreover, before accepting the plea, the trial court expressly admonished defendant as to the elements

of the offense (including the fact that defendant knowingly confined the victim), the range of possible penalties, and the consequences of pleading guilty. This is a far cry from *Morreale*, where, on the morning of trial, an assistant State's Attorney used defense counsel's absence as an opportunity to coax a guilty plea out of an inadequately represented defendant, and where the trial court's admonitions were confined to "the consequences of entering such a plea." The two cases could not be less alike.

Which is not to say that the present case lacks an analog. On the contrary, *People v. Ramirez*, 162 Ill. 2d 235 (1994), and *People v. Jones*, 144 Ill. 2d 242 (1991), are squarely on point. In *Jones*, the defendant pleaded guilty to three murders and was sentenced to death. In his second petition for postconviction relief, the defendant alleged, among other things, that trial counsel was ineffective by "induc[ing] the defendant to plead guilty by advising him erroneously that the trial judge owed counsel a favor and would not sentence the defendant to death." *Jones*, 144 Ill. 2d at 255. In rejecting this argument, *Jones* explained that the defendant's allegations were belied by the record, which clearly showed that, before accepting the defendant's plea, the trial court "questioned the defendant in open court as to whether his plea was obtained by coercion, threats or promises" and "repeatedly warned the defendant that he could receive the death penalty for his crimes." *Jones*, 144 Ill. 2d at 263. As importantly, *Jones* rejected any suggestion that "[the defendant's] expectation that the death sentence would not be imposed was permissible, given the alleged assurances of his counsel." *Jones*, 144 Ill. 2d at 263. To accept such an argument, the court explained, "would require us to characterize the court's lengthy and exhaustive admonitions as merely a perfunctory or ritualistic formality; a characterization we are unwilling to make." *Jones*, 144 Ill. 2d at 263.

Similarly, in *Ramirez*, the defendant pleaded guilty to possession of cannabis with the intent to deliver and was sentenced to five years in prison. Defendant later filed a postconviction petition alleging ineffective assistance of counsel. In support, the defendant alleged that his attorney induced him to plead guilty "by erroneously advising him that he had worked out a deal with the judge whereby defendant would be sentenced to a two-year term of probation." In rejecting this argument, the court stated:

"Our review of the record shows that the allegations made in the defendant's petition are refuted by the defendant's responses to the trial court's questions at the guilty plea hearing, at the sentencing hearing, and at the hearing on the motion to withdraw the defendant's guilty plea." *Ramirez*, 162 Ill. 2d at 240.

More specifically, *Ramirez* noted that, before accepting the defendant's plea, the trial court asked the defendant "whether he understood the nature of the charges against him," verified that the defendant "understood the plea agreement," and asked the defendant "whether anything else had been promised to him." *Ramirez*, 162 Ill. 2d at 241. Ultimately, *Ramirez* concluded that these admonitions, as well as defendant's on-the-record responses, "contradict the assertions raised in his postconviction petition that he pled guilty in reliance upon his counsel's promise that he would receive probation, and that such misrepresentations resulted in his denial of effective assistance of counsel." *Ramirez*, 162 Ill. 2d at 243.

Notably, in both *Jones* and *Ramirez*, the court went out of its way to explain that *Morreale* was wholly inapplicable. Neither Jones nor Ramirez were represented by their counsel's youthful associate, and neither was pressured or induced by the assistant State's Attorney to change his plea while confused and in a state of misapprehension. *Ramirez*, 162 Ill. 2d at 245; *Jones*, 144 Ill. 2d

at 265. As importantly, the trial court's admonitions in both cases were "more comprehensive than those required in 1952 when Morreale pleaded guilty, and adequately ensured that the defendant was entering a voluntary plea of guilty." *Ramirez*, 162 Ill. 2d at 245; *Jones*, 144 Ill. 2d at 265. In other words, both *Jones* and *Ramirez* treated *Morreale* as a singular case, controlled by its particular and highly unusual facts.

This leads to the obvious question: Is the present case more like *Morreale*, or more like *Jones* and *Ramirez*? There is no question that this case is more like *Jones* and *Ramirez*. In all three of these cases, the defendants entered their pleas free of any undue influence from the prosecution. More importantly, in all three cases, the defendants' claims of ineffective assistance were directly contradicted by the record. In *Jones* and *Ramirez*, the defendants claimed that they were given off-the-record assurances concerning their sentences. On the record, however, both defendants denied that any such assurances were given. In this case, defendant claims that he was told that lack of knowledge is not a defense to aggravated kidnapping. On the record, however, defendant was read the charge against him, including the allegation that he knowingly confined the victim, and he specifically stated that he understood it. This case is indistinguishable from *Jones* and *Ramirez*, and, as in those cases, we should defer to the record.

The majority is certain that the admonishments in this case were powerless to undo "[t]he alleged advice of counsel," which "would have necessarily influenced defendant's understanding of the knowledge element as it would be applied to his conduct." 217 Ill. 2d at 340. The majority then adds that, "[t]o state the obvious, defendant was entitled to rely on the advice of his attorney concerning the legal effect of available evidence and possible defenses to the charge." 217 Ill. 2d at 340.

While it may be true as a general matter that a defendant is entitled to rely on the advice of his counsel, it is not necessarily true in all cases. Indeed, this is the whole point of *Jones* and *Ramirez*. *Jones* and *Ramirez* clearly teach that a defendant is *not* entitled to rely on the advice of his attorney to contradict his own unequivocal responses to on-the-record admonishments. To allow otherwise would be to reduce admonishments to "merely a perfunctory or ritualistic formality." *Jones*, 144 Ill. 2d at 263.

In sum, the record clearly demonstrates that, prior to accepting defendant's guilty plea, the trial court asked defendant whether he understood the nature of the offense, including the allegation that he acted knowingly. Defendant responded in the affirmative. Under both *Jones* and *Ramirez*, this court should respect that answer and reject defendant's claim of ineffective assistance.

JUSTICES FITZGERALD and GARMAN join in this dissent.