2021 IL App (2d) 190566-U
No. 2-19-0566
Order filed August 4, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 12-CF-1008 |
| JESUS HERNANDEZ, | ) ) ) | Honorable David P. Kliment, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE BRENNAN delivered the judgment of the court.
Justices Hudson and Birkett concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Defendant, who pled guilty to a sex offense in exchange for a 16-year sentence, did not make a substantial showing that he was prejudiced by his trial counsel's failure to properly advise him of (1) the penalty he faced at trial if convicted of the offense and (2) the lack of fingerprint evidence implicating him and the possibility of a consent defense.

¶ 2   Defendant, Jesus Hernandez, who pled guilty to a sex offense, appeals from the judgment of the circuit court of Kane County dismissing, at the second stage of review, his petition filed under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2014)).  His petition alleged that his trial counsel was ineffective for misadvising him about the consequences of

pleading guilty and of his prospects of acquittal at trial. We agree with the trial court that defendant failed to make a substantial showing of a constitutional violation. Accordingly, we affirm the second-stage dismissal.

¶ 3                                              I. BACKGROUND

¶ 4       On June 27, 2012, defendant was indicted on eight counts. Counts I and II are particularly relevant in this appeal. Count I charged aggravated criminal sexual assault based on displaying or threatening the use of a knife (720 ILCS 5/11-1.30(a)(1) (West 2012)), while count II charged aggravated criminal sexual assault during the commission of another felony (720 ILCS 5/11-1.30(a)(4) (West 2012)). All eight counts arose from a May 17, 2012, incident at defendant's home in which he sexually assaulted a minor at knifepoint and then sexually assaulted an adult, M.P.

¶ 5       At defendant's July 12, 2012, arraignment, the trial court did not admonish him that the potential sentence for count I included a 10-year add-on because of the knife. On March 13, 2014, the trial court conducted a final pretrial hearing. At that hearing, the prosecutor noted that defendant had not been properly admonished at the arraignment as to "any kind of an enhanced penalty by way of an add-on" that would apply because defendant had used a knife while committing aggravated criminal sexual assault. Continuing on that subject, the court explained that, if defendant were found guilty of counts I and II and the jury found that he possessed a knife, there would be a 10-year add-on. The prosecutor then interjected that the add-on would apply only to count I because that was the charge that alleged the display of the knife. The court responded, "Okay." The court then asked defendant if he understood that, if he were found guilty of count I, which alleged the use of a knife, he would face a prison sentence of 6 to 30 years plus a 10-year

add-on because of the knife. Defendant answered that he understood the potential sentence on count I.

¶ 6     On March 17, 2014, the trial was scheduled to begin. The trial court commented that it wanted to revisit the sentencing admonishments that it had discussed on March 13, 2014. The court reiterated that, because defendant had not been advised at his arraignment about a 10-year add-on, the court wanted to make sure that defendant understood the sentences he faced. The court then stated that counts I and II charged aggravated criminal sexual assault and that they carried a sentencing range of 6 to 30 years in prison, which would be "followed by what is referred to as a ten-year add-on." The court remarked, "in looking at Counts One and Two," the minimum range would be 16 years based on a 6-year minimum plus a 10-year add-on. Both the prosecutor and defense counsel agreed. After discussing the sentencing range for the other offenses, the court stated that, if defendant were convicted of all charges, he would face a minimum sentence of 20 years in prison and a maximum of 100 years. The prosecutor and defense counsel agreed. The court then formally admonished defendant that, if convicted of all the charges, he faced a minimum prison sentence of 20 years and a maximum of 100 years. Defendant stated that he understood.

¶ 7     The trial court then asked defendant if, based on the sentencing admonishments, he would like to speak to his counsel. Defendant said yes, and the court recessed so that defendant could do so. After the recess, defense counsel told the court that he and defendant had discussed the potential sentence. Counsel added that the State had tendered a new plea offer and that defendant had agreed to accept it.

¶ 8     The State then advised the trial court that defendant had agreed to plead guilty to count II. In exchange for pleading guilty, the State agreed to *nolle prosse* the remaining counts. The State

and defendant further agreed to a 16-year prison sentence. Defendant stated that he had discussed the plea agreement with defense counsel.

¶ 9    The trial court then advised defendant that, if he pled guilty to count II, the applicable sentencing range would be 6 to 30 years in prison. The court did not mention an add-on. Defendant stated that he understood the potential sentence.

¶ 10    The State provided the following factual basis for the guilty plea. The State summarized that, on May 17, 2012, defendant, while committing a felony against a minor, forcibly placed his penis in the vagina of an adult victim, M.P. According to the State, both M.P. and the minor would testify that they, along with two other children, had gone to defendant's home to have pizza. Defendant invited them to stay overnight. M.P. was sleeping with two of the children in a bedroom when she got up and went into the living room. She discovered defendant between the legs of the minor victim and holding a knife to the minor's neck. She then pulled defendant off the minor. After the minor went into the bedroom, M.P. talked with defendant. M.P. would testify that defendant offered to pay the minor $500 to not go to the police.

¶ 11    As M.P. went to the bedroom, she saw defendant put the knife on a closet shelf. Defendant then grabbed her, threw her down on the living room floor, forcibly penetrated her vagina with his penis, and ejaculated. DNA evidence would show that defendant's semen was found in M.P.'s vagina. An emergency room physician would testify that an examination revealed findings consistent with nonconsensual intercourse, including an abrasion to M.P.'s labia and a small bruise on her right arm.

¶ 12    According to the State, the minor would testify that she had fallen asleep on the living room floor and awakened to find defendant trying to pull her pants down. She would further testify that defendant held a knife to her neck. When the trial court commented that there was no allegation

in count II of a knife being used, the prosecutor agreed. The court then noted that, because there was no allegation involving a knife in count II, there would be no add-on. The prosecutor withdrew from the factual basis any reference to defendant's use of a knife. The prosecutor stated that defendant's criminal history consisted of a 2005 burglary conviction, for which he served prison time, a 2008 obstruction conviction, a 2009 violation of an order of protection, and two other felony convictions for domestic violence. The prosecutor added that defendant was on supervised release when he committed the currently charged offenses.

¶ 13    Defendant pled guilty to count II, and the trial court accepted the plea. Pursuant to the plea agreement, the court sentenced defendant to 16 years in prison. Defendant filed neither a postplea motion nor an appeal.

¶ 14    On May 12, 2016, defendant filed a *pro se* postconviction petition, alleging that his trial counsel was ineffective for failing to inform him, before he pled guilty, (1) about a possible consent defense, (2) that his fingerprints were not found on the knife recovered from the scene, and (3) that he would be subject to a 10-year sentencing add-on if he were convicted on count II. The trial court advanced the petition to the second stage and appointed counsel.

¶ 15    Appointed counsel filed an amended postconviction petition. The petition reiterated that trial counsel was ineffective and added that, but for counsel's ineffectiveness, defendant would have gone to trial. The petition alleged that trial counsel (1) never told defendant that neither his DNA nor his fingerprints were found on the knife recovered from the scene, (2) never told defendant that he could pursue a consent defense and did not prepare defendant to testify in that regard, (3) failed to obtain certain text messages between defendant and M.P. that would have shown that the two were in a romantic relationship and that M.P. fabricated the sexual assault because she was angry with defendant, (4) never informed defendant of the penalties for the

charged offenses; for instance, defendant first learned at the final pretrial hearing on March 13, 2014, that he was subject to a 10-year add-on.

¶ 16    The trial court dismissed the petition on the State's motion.  In doing so, the court found that, before pleading guilty, defendant had a "substantial opportunity to object to the proceedings going forward" but did not.  The court also found that it was clear from the transcript of the guilty plea proceeding that defendant's plea was voluntary and intelligent and that he pled guilty to a "count which was unrelated to some of the claims that he raised in his petition."  Finally, the court stated that "that there [was] no evidence in the record to show that there [was] any claim of actual innocence or anything of that nature."  Defendant then filed this timely appeal.

¶ 17                                    II. ANALYSIS

¶ 18    On appeal, defendant contends that he made a substantial showing that trial counsel was ineffective at the guilty-plea stage by failing to properly advise him of (1) the consequences of pleading guilty and (2) the prospects of acquittal.  In that light, defendant argues that the trial court erred in dismissing his petition without an evidentiary hearing.

¶ 19    When, as here, a postconviction petition reaches the second stage, the trial court reviews the petition and accompanying documents to ascertain whether the petitioner has made a substantial showing of a constitutional violation.  *People v. Brown*, 2017 IL 121681, ¶ 24.  Upon a substantial showing of a constitutional violation, the petition must be advanced to the third stage, where the trial court conducts an evidentiary hearing.  *Id.*  If no such showing is made, the petition should be dismissed.  *Id.*  We review *de novo* the dismissal of a postconviction petition without an evidentiary hearing.  *Id.*  We may affirm the second-stage dismissal of a postconviction petition on any basis supported by the record.  *People v. Gonzalez*, 2016 IL App (1st) 141660, ¶ 25.

¶ 20    The sixth amendment to the United States Constitution (U.S. Const., amend VI) guarantees a criminal defendant the right to the effective assistance of counsel at all critical stages of the criminal proceedings, including the entry of a guilty plea. *Brown*, 2017 IL 121681, ¶ 25. A claim that a defendant was denied his constitutional right to the effective assistance of counsel is generally governed by a two-pronged test. *Id.* (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). Under that test, a defendant must establish that (1) his counsel's performance fell below an objective standard of reasonableness and (2) he was prejudiced by counsel's deficient performance. *Id.* A court may, without addressing whether counsel's performance was deficient, dispose of an ineffectiveness claim if there is an insufficient showing of prejudice. *People v. Givens*, 237 Ill. 2d 311, 331 (2010).

¶ 21    The two-part test also applies to a claim that trial counsel was ineffective during the guilty-plea process. *Brown*, 2017 IL 121681, ¶ 26. For a guilty-plea defendant, the performance prong of the test remains the same. *Id.* However, for purposes of the prejudice prong, a guilty-plea defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. *Id.* A defendant's conclusory allegation that he would not have pled guilty and would have demanded trial is insufficient to establish prejudice for purposes of an ineffectiveness claim. *Id.*

¶ 22    The required showing of prejudice depends on the nature of counsel's alleged error. *Id.* ¶ 34 (citing *Lee v. United States*, 520 U.S. __, __, 137 S. Ct. 1958, 1965-66 (2017). When a defendant's claim of ineffective assistance of trial counsel involves improper advice about the consequences of pleading guilty, "it is appropriate to compare the consequences of a defendant's conviction following a trial to the consequences of the defendant entering the guilty plea." *Id.* ¶ 36. Put another way, when the claim involves counsel's alleged failure to properly advise the

defendant of the consequences of pleading guilty, the defendant must establish that a decision to reject the guilty plea and proceed to trial would have been rational under the circumstances. *Id.* ¶ 40. The court must consider "the specific circumstances of each case when assessing a guilty-plea defendant's ineffective assistance claim based on his understanding of the consequences of pleading guilty." *Id.* ¶ 41.

¶ 23    If, on the other hand, counsel's alleged erroneous advice related to trial strategy and the defendant's acquittal prospects, then the defendant must show that he would have been " 'better off going to trial' absent his counsel's deficient performance by establishing that he would have been acquitted or had a viable defense." *Id.* ¶ 34 (quoting *Lee*, 582 U.S. at __, 137 S. Ct. at 1965-66). Put another way, whether prejudice resulted depends in large part on predicting whether a defendant likely would have succeeded at trial. *People v. Hall*, 217 Ill. 2d 324, 335 (2005).

¶ 24    Here, defendant claimed that his trial counsel was ineffective in advising him of the consequences of pleading guilty, in that counsel told him that *both* counts I and II carried a 10-year add-on based on his use of a knife, when in fact count II did *not* carry the 10-year add-on. He further claimed that counsel was ineffective in advising him on the prospects of acquittal by failing to inform him that his fingerprints were not found on the knife and for failing to explain that he had a plausible consent defense. We will address each claim separately.

¶ 25    The State does not dispute that counsel's advice about the penalty for count II was inaccurate, in that the 10-year add-on applied to count I but not to count II. See 720 ILCS 5/11-1.30(a)(1), (a)(4), (d)(1) (West 2010). Thus, we focus on whether defendant made a substantial showing that he was prejudiced. He did not.

¶ 26    As discussed, we must determine whether, under the circumstances, it would have been rational for defendant, had he known that there was no 10-year add-on for count II, to reject the

State's offer and proceed to trial. First, there was little doubt that defendant would have been convicted of the charges, as both victims were prepared to testify, and the medical evidence showed that M.P. was forcibly penetrated. Although defendant notes that his fingerprints were not found on the knife, such evidence would not have conclusively established that defendant did not use the knife. Further, while defendant contends that there was evidence that he and M.P. were in a consensual romantic relationship, such evidence would not have refuted his attempted sexual assault of the minor victim or the medical evidence of his sexual assault of M.P.

¶ 27    Second, it is likely that defendant would have received a greater sentence after trial than what the State offered in exchange for his plea. Count II charged a Class X felony, the penalty for which, absent any add-on, was 6 to 30 years' imprisonment. 720 ILCS 5/8-4(c)(1) (West 2010)). Defendant agreed to a sentence of 16 years, slightly lower than the middle of the applicable range. Additionally, the State agreed to *nolle prosse* the remaining charges, thereby significantly lowering defendant's potential maximum. As the parties and the court discussed, defendant, if convicted on all charges, faced a minimum of 20 years and a maximum of 100 years. This minimum was higher than the agreed sentence; further, given defendant's criminal history, he might have received an even greater sentence than the minimum if he were convicted of all counts at trial. See *Brown*, 2017 IL 121681, ¶ 49.

¶ 28    We conclude that defendant has failed to show prejudice from counsel's erroneous advice about the consequences of his guilty plea, as defendant has not shown that it would have been rational under the circumstances to reject the plea bargain and proceed to trial. Since defendant has not made a substantial showing of a constitutional violation, he was not entitled to an evidentiary hearing on this claim.

¶ 29    We next address defendant's claim that counsel was ineffective for failing to advise him that his fingerprints were not found on the knife and for failing to explain that he had a plausible consent defense. As discussed, whether counsel's deficient advice regarding defendant's prospects of acquittal prejudiced defendant requires us to consider whether defendant likely would have been successful at trial. See *Hall*, 217 Ill. 2d at 335.

¶ 30    Here, as noted, the absence of defendant's fingerprints on the knife would not have conclusively established that defendant did not use the knife. Such evidence would not have refuted the anticipated testimony of both victims that defendant did use a knife and that a knife was found at the scene. Thus, the lack of fingerprint evidence did not provide a plausible defense.

¶ 31    Nor has defendant shown prejudice from counsel's alleged failure to explain a consent defense to him. Even if defendant could have shown that he had been in a romantic relationship with M.P., that fact would not have explained the medical evidence that he had forcibly penetrated her. Nor would it have countered the evidence that he had used a knife. More importantly, it would not have refuted his attempted sexual assault of the minor victim. Because defendant has not shown that a consent defense would likely succeed at trial, he has not made a substantial showing of prejudice resulting from trial counsel's alleged failure to explain the defense. Thus, defendant was not entitled to an evidentiary hearing on his claim that counsel was ineffective for failing to advise him of his prospects of acquittal.

¶ 32                                    III. CONCLUSION

¶ 33    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 34    Affirmed.