NOTICE
Decision filed 11/08/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 230259-U

NO. 5-23-0259

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Macon County. |
| | ) | |
| v. | ) | No. 20-CF-106 |
| | ) | |
| ANTHONI J. GAUSE, | ) | Honorable |
| | ) | Thomas E. Griffith Jr., |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court.
Presiding Justice Vaughan and Justice McHaney concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm the circuit court's judgment revoking defendant's probation and sentencing him to four years in prison where defendant's alleged errors did not deprive him of a fair sentencing hearing and defense counsel did not provide ineffective assistance.

¶ 2    Defendant, Anthoni J. Gause, appeals the judgment of the circuit court of Macon County revoking his probation and sentencing him to four years in prison, to be followed by four years of mandatory supervised release. On appeal, he argues that the court's sentence should be reversed and the case remanded for a new sentencing hearing where the court relied on improper factors and evidence. Defendant also argues that defense counsel was ineffective for failing to object to the court's consideration of improper factors and evidence. We affirm.

1

¶ 3                                    I. Background

¶ 4     On January 23, 2020, the State charged defendant by information in case No. 20-CF-106 with two counts of aggravated domestic battery (720 ILCS 5/12-3.3(a), (a-5) (West 2020)), both Class 2 felonies, alleging that defendant, in committing a domestic battery, caused great bodily harm to Felicia Beasley, a family or household member, in that defendant struck Beasley, causing a fractured nasal bone (count I), and applied pressure to Beasley's neck, intentionally impeding her normal breathing or the circulation of her blood (count II). The State also charged defendant with two counts of domestic battery with three prior domestic battery convictions (*id.* § 12-3.2(a)(1)), both Class 3 felonies, alleging that defendant caused bodily harm to (count III), and made physical contact of an insulting or provoking nature with (count IV), Beasley, a family or household member, after having been previously convicted of domestic battery in three prior Macon County cases (case Nos. 17-CF-1808, 17-CF-168, 10-CF-956).

¶ 5     On May 19, 2020, the circuit court held a hearing. The State indicated that, pursuant to a negotiated plea agreement, defendant agreed to plead guilty to aggravated domestic battery, as alleged in count I, in exchange for the State's recommendation of a sentence of 24 months' probation and 60 days in jail. The court advised defendant that the sentencing range for the aggravated domestic battery charge was 3 to 14 years,[1] to be followed by a 4-year term of mandatory supervised release. The court further advised that the sentence would be required to be served at 85%. Defendant indicated that he understood.

¶ 6     The State presented a factual basis, which indicated that defendant went to the home of his ex-girlfriend, Felicia Beasley, on December 13, 2019, the two were involved in an argument,

_____

[1]It appears that defendant could be sentenced on count I, aggravated domestic battery, to a term of incarceration from 3 to 7 years if he was not extended-term eligible (720 ILCS 5/12-3.3(b) (West 2020)), or a term of 3 to 14 years if he was extended-term eligible (730 ILCS 5/5-5-3.2(b)(1) (West 2020)). The circuit court did not discuss defendant's eligibility for extended-term sentencing at the hearing.

defendant struck Beasley in the face, and Beasley suffered a fractured nasal bone. The court found the factual basis sufficient and sentenced defendant in accordance with the parties' agreement. The court noted that counts II, III, and IV were "dismissed and stricken."

¶ 7     On April 12, 2022, the State filed a first petition to revoke probation. The State alleged that defendant violated his probation by committing new offenses of home invasion (case No. 22-CF-392), domestic battery with four prior domestic battery convictions (case No. 22-CF-392), domestic battery with four prior domestic battery convictions (case No. 22-CF-392), domestic battery with four prior domestic battery convictions (case No. 22-CF-391), domestic battery with four prior domestic battery convictions (case No. 22-CF-391), and criminal damage to property.[2]

¶ 8     On April 27, 2022, the circuit court held a preliminary hearing in case Nos. 22-CF-391, 22-CF-392, and 22-CF-398,[3] as well as an arraignment on the first petition to revoke in case No. 20-CF-106. Defendant pled not guilty and waived his right to a preliminary hearing in case No. 22-CF-398. Defendant also waived a formal arraignment as to the first petition to revoke probation in case No. 20-CF-106. The court proceeded to a preliminary hearing on case Nos. 22-CF-391 and 22-CF-392.

¶ 9     Regarding case No. 22-CF-391, the State called "Officer Blair"[4] of the Decatur Police Department. Officer Blair testified that on August 22, 2021, Ramona Harper, defendant's ex-girlfriend, advised police that she was involved in a verbal argument with defendant, that defendant pushed Harper to the ground, that defendant ripped Harper's shirt and bra, and that defendant struck Harper with a closed fist several times in the face and ribs. Officer Blair observed bluish swelling under Harper's left eye and an abrasion with blood on the right side of her forehead.

---

[2]The case number for the criminal damage to property offense is not clearly set forth in the record.
[3]It appears from the record that defendant committed the offense of aggravated fleeing or attempting to elude an officer on April 9, 2022, and the case was docketed as 22-CF-398.
[4]The transcript from the proceeding indicates that Officer Blair's first name was "unintelligible."

Defense counsel conducted a brief cross-examination of Officer Blair. The court found that there was probable cause to believe defendant committed the felony offense charged in case No. 22-CF-391 and noted that defendant pled not guilty.

¶ 10    Regarding case No. 22-CF-392, the State called Brian Allison, a police officer for the City of Decatur. Officer Allison testified that on October 8, 2021, Felicia Beasley advised police that defendant kicked in the door to her house, defendant hit her in the head with a small plastic chair, and defendant punched and kicked her several times. Police observed swelling above Beasley's left eye and an injury to Beasley's lip. Defense counsel conducted a brief cross-examination of Officer Allison. The court found that there was probable cause to believe defendant committed the felony offense charged in case No. 22-CF-392 and noted that defendant pled not guilty.

¶ 11    On September 29, 2022, the State filed a second petition to revoke probation. The State alleged that defendant violated his probation by committing a new offense of aggravated fleeing or attempting to elude an officer on April 9, 2022 (case No. 22-CF-398). At a hearing held the same day, defendant admitted the allegations in the second petition. The circuit court advised defendant that, by admitting to the allegations in the second petition, he would proceed to an open sentencing hearing for aggravated domestic battery (case No. 20-CF-106). The court advised defendant that he was eligible for a sentence of conditional discharge, probation, or 3 to 14 years in prison, to be followed by a 4-year term of mandatory supervised release. Defendant indicated that he understood.

¶ 12    The State's factual basis for the probation violation indicated that defendant was previously placed on 24 months' probation in May 2020, and that "Officer Vickers of Decatur Police Department" observed defendant drive at a high speed and commit two traffic violations on April 9, 2022. Officer Vickers chased defendant's vehicle for approximately two minutes but stopped

4

the chase for public safety reasons. Police subsequently arrested defendant, and he admitted to the chase. The circuit court found a factual basis for defendant's admission, ordered a presentence investigation (PSI) report, and continued the case for resentencing. The State withdrew the first petition to revoke and dismissed the pending charges against defendant in case Nos. 22-CF-391 and 22-CF-392.

¶ 13    On November 1, 2022, the PSI report was filed with the circuit court. The PSI indicated that defendant had a lengthy adult criminal record, including multiple felony and misdemeanor convictions and charges. Defendant's criminal record included four prior convictions for domestic battery. The PSI indicated that defendant had previously served several prison sentences and that he was placed on probation and conditional discharge on several occasions. The PSI further indicated that defendant's probation and conditional discharge were unsuccessfully terminated on each occasion. Defendant also committed three offenses as a juvenile and was given probation, but his probation was revoked due to a violation.

¶ 14    The PSI report indicated that defendant was 31 years old, single, and had three children, one of which was in the custody of the Illinois Department of Children and Family Services with a permanency goal of adoption. Defendant reported that he spent time with his children every day and was not ordered to pay child support. Defendant had an eighth-grade education and had not been employed since April 8, 2022. The PSI report concluded with the probation department's recommendation that defendant receive conditional discharge.

¶ 15    On November 9, 2022, the circuit court held the resentencing hearing. At the outset, the court asked if there were any additions or corrections to the PSI. Defense counsel noted that defendant had since obtained employment. Counsel also clarified that defendant's youngest child, a three-month-old, resided with defendant and that defendant provided support for the child.

5

¶ 16 The State asked that the circuit court take notice of the sworn statements from police officers in "22-CF-391," "22-CF-392," and "22-CF-398." The State also asked that the court take notice of defendant's admission in "22-CF-398."

¶ 17 The circuit court admitted sworn statements into evidence without objection from defense counsel. When asked for an objection, defense counsel stated that she had no basis to object because the documents were court records. The court took a brief recess to review the documents. The State did not present any additional evidence in aggravation, and defense counsel did not present any evidence in mitigation.

¶ 18 Defendant elected to make a statement in allocution. Defendant stated, "I mean the night that I caught the Aggravated Fleeing and Eluding the reason why I ain't stop is 'cause my step-daughter had died and the funeral was the next morning."

¶ 19 The circuit court then asked for recommendations from the State and defense counsel. The State argued that defendant had a prior history of domestic battery offenses. The State noted that defendant committed two more domestic battery offenses while on probation, one of which included a home invasion. The State could think of no reason to grant defendant "any leniency whatsoever" because defendant broke Beasley's nose, was "given an opportunity to resolve this in a community based sentence[,] and ha[d] committed new offenses while on that community based sentence." Thus, the State recommended a seven-year prison sentence.

¶ 20 Defense counsel noted that defendant was eligible for continued, or additional probation, as well as a prison sentence ranging from three to seven years. Counsel later clarified that defendant would be "extended term eligible." Counsel noted that defendant denied "the facts set forth in 22-CF-391 and 392." Counsel noted that defendant never had the opportunity to challenge the evidence in those cases and, thus, asked the circuit court "to give minimal if any weight to

6

those particular sworn statements." Counsel noted that defendant admitted to the second petition, alleging "Aggravated Fleeing." Counsel reiterated defendant's explanation that he did not want to go to jail because he did not want to miss his stepdaughter's funeral the following morning. Counsel noted that defendant was employed, supported his child, and did not use drugs or alcohol. Counsel also noted that the probation department recommended conditional discharge, or continued probation. Thus, defense counsel requested that the circuit court follow the probation department's recommendation or, alternatively, impose "minimal if any incarceration."

¶ 21 After considering the parties' arguments, the circuit court stated that it "considered the facts of this case, the factors in aggravation and mitigation and [the PSI] report." The court initially noted that defendant was 31 years old and on probation "for a very serious offense." The court noted that "the sworn statement for this offense indicated that, apparently, [defendant] strangled the victim, someone by the name of Felicia Beasley, to the point she could not breathe." The court further noted that Beasley was taken to a hospital and discovered to have a nasal fracture. The court stated, "And for whatever reason he was placed on Probation in this case, even though he was still on parole it sounds like in the 17168 and 171808 both of which are Domestic Battery cases." The court went on to state the following:

> "[Defendant] has made a mess of his Probation. We have the new fleeing and eluding case, which certainly sounds like there was compelling evidence. I understand the mitigating circumstances. There's also some evidence that [defendant] was involved in additional domestic battery cases as set forth in the 391 and the 392.
> Regarding the Probation Officer's recommendation, to be frank, it makes absolutely no sense and I don't know where such a—where such a recommendation came from. He—on top [of] that he's got a poor criminal history, Agg. Fleeing again in 2010, Domestic Battery in 2010, Agg. Robbery in 2011, Obstructing Justice and so on.
> [Defendant] did plead guilty and admit the violation here. He is employed. And this is an 85 percent sentence. So on balance, there certainly isn't gonna be any more Probation. That would make no sense whatsoever."

7

¶ 22    The circuit court concluded that a continued sentence of probation would deprecate the seriousness of defendant's conduct and that a prison sentence was necessary to protect the public. The court resentenced defendant to prison for a period of four years, to be followed by four years of mandatory supervised release. The court's written sentencing judgment was filed on November 10, 2022.

¶ 23    On December 5, 2022, defendant's newly retained counsel filed an entry of appearance. The following day, newly retained counsel filed a motion to reconsider sentence. Counsel asserted that the trial court erred by failing to consider defendant's potential for rehabilitation and to give adequate consideration to the factors in mitigation presented at sentencing. Counsel further asserted that defendant's sentence was greatly at variance with the spirit and purpose of the law and was manifestly disproportionate to the nature of the offense.

¶ 24    On April 5, 2023, the circuit court held a hearing on defendant's motion to reconsider sentence. The court indicated that it reviewed the motion, "the original sworn statement in the case, and the [PSI] report that was filed at the time of the original sentence hearing." When the court asked if defense counsel planned to present any additional evidence, defense counsel asked that the court "take judicial notice of all those documents as well as the transcripts from the sentencing hearing on the 9th of November 2022 and the second charging violation dated September 29 of 2022." The court briefly recessed to review the transcript from the original sentencing hearing.

¶ 25    Defense counsel then called defendant to testify at the hearing. Defendant testified that he attempted to flee police because he had a funeral the following day and that he admitted the allegations in the petition because he believed he "was getting conditional discharge." Defendant claimed that his prior public defender advised him that he would receive conditional discharge.

¶ 26    After considering the parties' arguments, the circuit court denied the motion to reconsider sentence. In doing so, the court stated that it considered defendant's age, the seriousness of the offense, defendant's criminal history, and the three offenses that occurred while he was on probation.

¶ 27    Defendant filed a timely notice of appeal.

¶ 28                                    II. Analysis

¶ 29    On appeal, defendant first argues that his sentence should be reversed and the cause remanded for a new sentencing hearing where the circuit court relied on improper factors and evidence when it resentenced him to four years in prison. We disagree.

¶ 30    As an initial matter, we note that defendant forfeited review of these issues by failing to object at the sentencing hearing and by failing to include the issues in his motion to reconsider sentence. "Sentencing errors raised for the first time on appeal are reviewable as plain error if (1) the evidence at the sentencing hearing was so closely balanced that the error alone threatened to tip the scales of justice against the defendant or (2) the error was sufficiently grave that it deprived the defendant of a fair sentencing hearing." *People v. Solis*, 2019 IL App (4th) 170084, ¶ 29 (citing *People v. Scott*, 2015 IL App (4th) 130222, ¶ 41). " 'Under both prongs of the plain-error doctrine, the defendant has the burden of persuasion.' " *Id.* (quoting *People v. Hillier*, 237 Ill. 2d 539, 545 (2010)). "When a defendant fails to establish plain error, the result is that the 'procedural default must be honored.' " *People v. Bannister*, 232 Ill. 2d 52, 65 (2008) (quoting *People v. Keene*, 169 Ill. 2d 1, 17 (1995)).

¶ 31    Defendant asserts that he is entitled to review under the second prong of the plain-error doctrine, claiming that the circuit court's consideration of improper factors and evidence deprived him of a fair sentencing hearing. See *People v. Abdelhadi*, 2012 IL App (2d) 111053, ¶ 7 (a

9

defendant's fundamental right to liberty is unjustly affected when the circuit court considers erroneous aggravating factors in determining a prison sentence and, thus, is seen as a serious error that is reviewable under the second prong of the plain-error doctrine). Specifically, defendant argues that the court erred by considering hearsay police statements, punishing him for conduct that occurred during his probation term, and relying on unproven offense conduct. Assuming *arguendo* that the circuit court erred by considering improper factors and evidence in the present case, we conclude that defendant's sentencing hearing was not fundamentally unfair so as to warrant plain-error review.

¶ 32    "Imposition of a sentence is normally within a trial court's discretion [citation], and there is a strong presumption that the trial court based its sentencing determination on proper legal reasoning, such that the trial court's sentencing decision is reviewed with great deference." *Id.* ¶ 8. "The presumption is overcome only by an affirmative showing that the sentence imposed varies greatly from the purpose and spirit of the law or manifestly violates constitutional guidelines." *Id.* (citing *People v. Escobar*, 168 Ill. App. 3d 30, 46 (1988)). However, "the question of whether a court relied on an improper factor in imposing a sentence ultimately presents a question of law to be reviewed *de novo*." *Id.* (citing *People v. Chaney*, 379 Ill. App. 3d 524, 527 (2008)).

¶ 33    "When a trial court considers an improper factor in aggravation, the case must be remanded unless it appears from the record that the weight placed upon the improper factor was so insignificant that it did not lead to a greater sentence." *Id.* ¶ 18 (citing *People v. Dowding*, 388 Ill. App. 3d 936, 945 (2009)). In determining whether the circuit court afforded significant weight to an improper factor such that remand would be required, reviewing courts have considered the following: "(1) whether the trial court made any dismissive or emphatic comments in reciting its consideration of the improper factor; and (2) whether the sentence received was substantially less

10

than the maximum sentence permissible by statute." *Id.* (citing *Dowding*, 388 Ill. App. 3d at 945). Generally, " 'a sentence within the statutory range for the original offense will not be set aside on review *unless* the reviewing court is strongly persuaded that the sentence imposed after revocation of probation was *in fact* imposed as a penalty for the conduct which was the basis of the revocation, and *not* for the original offense.' " (Emphases in original.) *People v. Vilces*, 186 Ill. App. 3d 983, 986 (1989) (quoting *People v. Young*, 138 Ill. App. 3d 130, 142 (1985)).

¶ 34    Here, defendant fails to show that the circuit court's consideration of improper factors or evidence affected the fairness of his resentencing hearing. We initially note that aggravated domestic battery is a Class 2 felony punishable by probation, conditional discharge, or three to seven years in prison. 720 ILCS 5/12-3.3(b) (West 2020); 730 ILCS 5/5-4.5-35 (West 2020). While there is some confusion in the record, it appears that defendant was eligible for an extended-term sentence of 3 to 14 years in prison. 730 ILCS 5/5-5-3.2(b)(1) (West 2020). The court sentenced defendant to four years in prison—a sentence only one year above the minimum sentence—for striking Beasley in the face, causing a fractured nasal bone.

¶ 35    Defendant fails to show that the circuit court placed significant weight on the sworn statements or uncharged conduct in imposing the four-year sentence. Notably, the court made only one mention of a sworn statement and uncharged conduct in imposing its sentence. In considering the serious nature of the offense, the court stated that "the sworn statement for this offense indicated that, apparently, [defendant] strangled the victim, someone by the name of Felicia Beasley, to the point she could not breathe." We acknowledge that the State dropped the aggravated battery charge based on strangulation as part of the plea agreement. However, the court also considered that Beasley was taken to a hospital where she was discovered to have a nasal fracture, which resulted from defendant striking her in the face. As such, the court considered the

11

conduct giving rise to the underlying offense in imposing its sentence. Strangulation aside, defendant's act of striking Beasley with such force that she sustained a fractured nasal bone demonstrated the serious nature of the offense and supported the court's determination that the seriousness of the offense was an aggravating factor. We note that, during the resentencing hearing, the court questioned the previously imposed probation sentence, given that defendant was on parole for prior domestic battery offenses. Moreover, the court highlighted defendant's lengthy criminal record in imposing the four-year sentence. Based on our review of the record, defendant fails to show that the court placed significant weight on the sworn statements or uncharged conduct in imposing the four-year sentence.

¶ 36    The record further reveals that the circuit court properly considered defendant's conduct on probation as evidence of defendant's rehabilitative potential. See *People v. Varghese*, 391 Ill. App. 3d 866, 876 (2009). The court specifically noted that, while on probation, defendant committed the offense of aggravated fleeing and eluding and that there was "some evidence that [defendant] was involved in additional domestic battery cases as set forth in the 391 and the 392." The court merely referenced the additional domestic battery cases without reciting any detailed facts underlying those offenses. The court also noted that defendant had a "poor criminal history, Agg. Fleeing again in 2010, Domestic Battery in 2010, Agg. Robbery in 2011, Obstructing Justice and so on." The court also stated that it considered the PSI, which listed multiple prior felony and misdemeanor offenses. Moreover, the PSI indicated that defendant had been placed on probation or conditional discharge on several occasions and that on each occasion it was terminated unsuccessfully. The court commented on defendant's prior criminal history and his conduct on probation in determining that an additional term of probation was inappropriate—a mitigating factor that the court was required to consider but found not to apply. See 730 ILCS 5/5-5-3.1(a)(10)

12

(West 2020) (the circuit court must consider whether a defendant is "particularly likely to comply with the terms of a period of probation"). Defendant's prior criminal history, coupled with his conduct on probation, reflected negatively on his potential for rehabilitation and his likelihood of complying with an additional period of probation. After carefully reviewing the record, this court is not strongly persuaded that the sentence imposed after revocation of probation was imposed as a penalty for defendant's conduct on parole. See *Vilces*, 186 Ill. App. 3d at 986.

¶ 37    In sum, defendant fails to show he was denied a fair resentencing hearing. The circuit court sentenced defendant to four years—one year above the minimum sentence. The court considered the nature and circumstances of the underlying offense, noting that defendant caused Beasley to sustain a fractured nasal bone. The court also considered defendant's lengthy criminal history, as well as his conduct on probation, in evaluating defendant's rehabilitative potential. Moreover, the court expressly considered the mitigating evidence, including defendant's employment, the fact that he provides for his minor child, his explanation for fleeing and eluding police, and his acceptance of responsibility by pleading guilty and admitting to the fleeing and eluding offense. Accordingly, we do not consider any of defendant's alleged errors as having jeopardized the fairness of his resentencing hearing and we honor his procedural default.

¶ 38    Defendant next argues that defense counsel was ineffective for failing to object to the circuit court's consideration of the improper factors at sentencing. We disagree.

¶ 39    "In order to succeed on a claim of ineffective assistance of counsel, a defendant must show (1) counsel's representation fell below an objective standard of reasonableness (deficiency prong) and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different (prejudice prong)." *People v. Boyd*, 2018 IL App (5th) 140556, ¶ 16 (citing *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)). "To establish deficiency under

the first prong of the *Strickland* test, an individual must overcome the strong presumption that the challenged action or inaction was the product of sound trial strategy." *Id.* ¶ 17 (citing *People v. Simms*, 192 Ill. 2d 348, 361 (2000)). "It is well settled there is a strong presumption that counsel's conduct falls within the wide range of professional assistance." *Id.* (citing *People v. Crutchfield*, 2015 IL App (5th) 120371, ¶ 34). To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

¶ 40 "Both prongs under *Strickland* must be satisfied in order to succeed on a claim of ineffective assistance, and the failure to satisfy either prong will be fatal to the claim." *Boyd*, 2018 IL App (5th) 140556, ¶ 19 (citing *People v. Mack*, 2016 IL App (5th) 130294, ¶ 27). "Therefore, a court need not address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* (citing *People v. Ramos*, 339 Ill. App. 3d 891, 900 (2003)).

¶ 41 Here, defendant's ineffective assistance claim fails because he is unable to establish prejudice. As noted, it appears from the record that the circuit court placed minimal weight on the sworn statements and uncharged conduct. Moreover, defense counsel directed the court to place little to no weight on the offenses charged in case Nos. 22-CF-391 and 22-CF-392, where defendant had no opportunity to challenge the evidence in those cases. In addition, the court properly considered defendant's conduct on probation, along with his lengthy criminal history, as evidence of his rehabilitative potential, or lack thereof. Moreover, we reiterate that defendant received a four-year sentence—one year above the minimum possible sentence. Consequently, we conclude that there was not a reasonable probability that but for counsel's failure to object to the improper factors and evidence, defendant would have received a shorter sentence.

14

¶ 42                                III. Conclusion

¶ 43    For the foregoing reasons, we affirm the judgment and sentence of the circuit court.


¶ 44    Affirmed.